Dwayne M. THAVENET, Teri Thavenet, Adam Thavenet, Kylie Thavenet, and Jason Thavenet, Minors, By Their Parent and Next Friend, Teri Thavenet, Appellants,

v.

Charles DAVIS, Appellee,

and

William B. Wilcox and Road Runner Distributing Service, Inc., Defendants.

No. 97–498.

Supreme Court of Iowa.

Feb. 17, 1999.

Daniel D. Bernstein of William J. Bribriesco & Associates, Bettendorf, for appellants.

John W. Hayek and Joseph T. Moreland of Hayek, Hayek & Brown, L.L.P., Iowa City, for appellee.

SNELL, Justice.

This case is reviewed further by our court following a decision by the Iowa Court of Appeals that affirmed a jury verdict in defendant's favor. We now vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial.

## I. Background Facts and Proceedings

On February 14, 1995, Dwayne Thavenet was driving east on Interstate 80 near Iowa City when a truck driven by Charles Davis, traveling westbound on Interstate 80, crossed the median and struck his car. Thavenet sustained fractures to his clavicle and ankle. Thavenet, his wife, and children filed a petition against Davis alleging his negligence was the cause of plaintiffs' injuries and damages.

At trial, evidence was presented that Davis was driving a semi truck without a trailer attached, a "bobtail." The highway was one hundred percent ice covered at the time of the accident; however, these freezing conditions had occurred quickly. Davis was the third in a row of three semis in the left lane when a semi truck in the right lane jackknifed. Davis veered left to avoid the semi that braked in front of him. Davis crossed the median and entered the eastbound lanes of Interstate 80 where he collided with Thavenet's car. Davis testified he was traveling at a rate of fifty to fifty-five miles per hour and was approximately twenty-five to thirty-five feet behind the semi in front of his bobtail.

The jury returned a verdict for the defendant and the district court entered judgment in the defendant's favor. Plaintiffs' subsequent motion for new trial was overruled and plaintiffs appealed. We transferred the case to the court of appeals. The court of appeals decided three evidentiary issues of which plaintiffs seek review of one. We review that issue and plaintiffs' claim that the court's instructions on legal excuse and sudden emergency constituted legal error.

## II. Opinion Testimony

At trial plaintiffs proposed to introduce portions of testimony from the deposition of Brad Swyers, an expert witness intended to be used by defendant, who was deposed by plaintiffs. In response, defendant said that other testimony from Swyers' deposition would be offered. That included Swyers' response to plaintiffs' questions regarding the cause of the accident. Swyers testified that in his opinion the primary cause of the collision was the jackknifed truck, which caused Davis to be faced with a sudden emergency. Plaintiffs objected to these portions of the deposition, arguing that Swyers was acting outside of his area of expertise as a trucking expert when he used the term sudden emergency in his answers to interrogatories. The trial court ruled that it was going to permit the reading of the deposition questions and answers of Swyers proposed by defendant and objected to by plaintiffs. Plaintiffs, thereupon, being concerned that prejudice would result from reading the expert's legal conclusions to the jury, did not offer the deposition testimony of Swyers. Plaintiffs now claim that their tactical decision was a necessary consequence of the court's ruling, which was in error, and prejudiced plaintiffs' case. Reversible error is predicated on this ruling.

We review this issue based on our standard that opinion evidence, lay or expert, is admissible largely as a discretionary matter with the trial court. *Wadle v. Jones*, 312 N.W.2d 510, 515 (Iowa 1981). We will not interfere with the trial court's ruling on admissibility unless there exists a manifest abuse of discretion. *Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 639 (Iowa 1988).

Iowa Rule of Civil Procedure 145(a) provides:

If a party offers only part of a deposition, his adversary may require him to offer all of it relevant to the portion offered; and any other party may offer other relevant parts.

The trial court's ruling that would have allowed defendant to introduce parts of Swyers' deposition, to which plaintiffs object-

ed, followed this rule. *Cf. State v. Austin,* 585 N.W.2d 241, 243–44 (Iowa 1998) (other party permitted to introduce explanatory evidence in interest of fairness under Iowa Rule of Civil Procedure 106(a)).

Nevertheless, plaintiffs contend that they should be permitted to object to the answers to their own questions put to Swyers at the deposition, citing Iowa Rules of Civil Procedure 158(d) and (e). Those rules preserve most objections to testimony taken by deposition for trial time. Plaintiffs believe that their objections to Swyers' opinion as to the primary causes of the accident should have been sustained as inadmissible legal conclusions and that their objections come within the protection of Iowa Rules of Civil Procedure 158(d) and (e).

Plaintiffs seek further support from our discussion in *Osborn v. Massey–Ferguson, Inc.,* 290 N.W.2d 893, 899 (Iowa 1980), as follows:

> The above authorities lead us to believe that in the situation where the opponent (plaintiff) offers at trial deposition questions propounded by the other party (defendant) and answers received thereto, then the other party has the right to object at trial under the "rules of evidence," rule 144, to any such questions or answers. This right is without regard to the provisions of rules 158(d) and (e), which we believe apply only to the situation where the propounder of the deposition questions is offering the deposition into evidence at trial; however, those rules apply only as to that portion of the deposition wherein he asked the questions. Therefore, rules 158(d) and (e), did not operate to restrict defendant's right to object at trial, on any grounds, to the Wardle deposition questions defendant propounded and the answers thereto.

These statements in *Osborn* were made based on our finding that it was proper for defendant to make objections at trial to the questions and answers in the Wardle deposition which was taken by defendant but offered by plaintiff. We cited Iowa Rule of Civil Procedure 144 providing for the use of deposition testimony at trial "so far as admissible under the rules of evidence." We also held that rules 158(d) and (e) did not operate to restrict defendant's right to object at trial, on any grounds, to the Wardle deposition questions defendant propounded and the answers thereto.

In the case at bar, the Thavenets are in the same position as plaintiff Osborn in that they offered Swyers' deposition in evidence pursuant to rule 144(d) (deposition of expert witness retained specifically for litigation may be used for any purpose). As held in *Osborn,* defendant Davis had the right to offer in evidence at trial the questions and answers of Swyers propounded by plaintiffs. However, plaintiffs are not, by offering the deposition testimony of Swyers taken by them, foreclosed at trial from objecting to inadmissible questions and answers, under the rules ·of evidence. *Cf. Sanderson v. Steve Snyder Enters., Inc.,* 196 Conn. 134, 491 A.2d 389, 393 (1985) (plaintiffs had right to omit hearsay statements in their initial offer of deposition testimony and to object to entry of those statements by defendant). Thus, plaintiffs could and did object to defendant's proposed questions and answers by Swyers. The trial court, after off-the-record arguments and further arguments outside the presence of the jury, ruled that if plaintiffs were going to submit Swyers' testimony, the court was going to permit all of defendant's proposed questions and answers.

Gleaned from the transcript, we find that plaintiffs alerted the court to their objection that Swyers' testimony which defendant intended to offer that the primary cause of the collision was the jackknifed truck which caused Davis to be faced with a sudden emergency was inadmissible because Swyers was not a reconstruction expert and his opinion involved a legal conclusion that improperly invaded the province of the jury. As such, the objection of plaintiffs was proper and should have been sustained. *See Hyler v. Garner,* 548 N.W.2d 864, 868 (Iowa 1996) (noting expert witness must be qualified to answer particular question propounded); *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch,* 497 N.W.2d 821, 827 (Iowa 1993) (expert witness may not state opinions as to legal standards, citing committee comment to Iowa Rule of Evidence 704); *accord Terrell*

v. *Reinecker*, 482 N.W.2d 428, 430 (Iowa 1992); *Miller v. Bonar*, 337 N.W.2d 523, 529 (Iowa 1983). When it was not, plaintiffs were thus presented with a Hobson's choice of offering Swyers' deposition testimony that included inadmissible opinion evidence or not offering any of the deposition testimony. This choice, precipitated by legal error, prevented plaintiffs from having the opportunity to have the jury consider admissible evidence in support of their case and having a fair trial. For this reason, we hold that legal error occurred that prejudiced plaintiffs in trying their case. We reverse on this issue and remand for a new trial.

III. Instruction on Sudden Emergency and Legal Excuse

For guidance, we comment on plaintiffs' assignment of error by the trial court in instructing on sudden emergency and legal excuse.

The trial court gave the following instructions on legal excuse.

### INSTRUCTION NO. 19

Charles Davis claims that if you find that he violated the law in the operation of his vehicle, he had a legal excuse for doing so because the jackknifing of the Wilcox/Roadrunner truck presented a sudden emergency and made control of his vehicle impossible. "Legal excuse" means that someone seeks to avoid the consequences of his or her conduct by justifying the acts which would otherwise be considered negligent. Charles Davis must prove the defense of legal excuse by proving he was confronted with a sudden emergency as defined in Instruction No. 20.

If you find that Charles Davis has violated the law as submitted to you in other instructions, and that he has established a legal excuse for doing so, then you should find that Charles Davis was not negligent for violating the particular law involved.

The instruction on sudden emergency given by the court reads as follows:

### INSTRUCTION NO. 20

A sudden emergency is a combination of circumstances that calls for immediate action or a sudden or unexpected occasion for action. An emergency situation does not excuse lack of ordinary care. A driver of a vehicle who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the driver exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances.

 Our standard of review for jury instructions is whether prejudicial error by the trial court has occurred. *Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 148 (Iowa 1992). Instructions must be considered as a whole, and if the jury has not been misled there is no reversible error. *In re Will of Behrend*, 233 Iowa 812, 818, 10 N.W.2d 651, 655 (1943).

Plaintiffs' error assignment on these instructions reasons thusly. The instructions failed to plainly state that defendant cannot be legally excused if he contributed to the emergency which caused the violation of the law, and merely left the jury to infer this. Plaintiffs assert that those two instructions are fatally flawed because they do not state that the person claiming the legal excuse must prove the emergency that caused his failure to obey the law was not of his own making. Plaintiffs claim that a juror reading these instructions could misapprehend the law and think that when facing a sudden emergency a defendant would be excused from negligence by the doctrine of legal excuse without considering whether the defendant contributed to this emergency or it was of defendant's own making. Plaintiffs cite Iowa Uniform Jury Instruction 600.74 (Legal Excuse) as illustrative and argue that error resulted by not giving the instruction as there stated.

Plaintiffs point out that our uniform legal excuse instruction states that the burden is on the defendant to establish a legal excuse and that the emergency is not of his or her own making, whereas the trial court's Instruction No. 19 defines "legal excuse" and then refers to Instruction 20 for the explanation of "sudden emergency." Plaintiff then

faults Instruction 20 as failing to state that the emergency defined must not be one of defendant's own making. Plaintiffs cite *Weiss v. Bal,* 501 N.W.2d 478 (Iowa 1993), arguing that the sudden emergency definition is separate from the elements necessary to establish its use as a legal excuse and mixing the instructions misinforms the jury.

▮ We have compared the instructions given with the uniform instructions and conclude that whereas plaintiffs' argument has some merit puristically, it does not reach the level of constituting reversible legal error. Instructions must be considered as a whole, and if some part was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved. *Moser v. Stallings,* 387 N.W.2d 599, 605 (Iowa 1986). This is the situation in the case at bar. The jury was instructed that an emergency situation does not excuse a lack of ordinary care. Also that a driver, who, through no fault of his or her own, is placed in a sudden emergency is not chargeable with negligence if the driver exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances. In considering a similar question in *Johnson v. Interstate Power Co.,* 481 N.W.2d 310, 324 (Iowa 1992), we found no error where the law was instructed by reading several instructions together. We found that the gist of a proposed instruction the court refused to give was covered in another instruction. We also noted that the jury was instructed to consider all of the instructions together and that no one instruction contained all the applicable law.

Standing alone we do not find that these instructions provide a sufficient ground for reversal. However, on retrial the point raised by plaintiffs should be recognized and instructions given that properly state the law and eliminate the problem cited as an issue here by plaintiffs.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT REVERSED; REMANDED FOR NEW TRIAL.**

All justices concur except CARTER, J., McGIVERIN, C.J., and HARRIS, J., who dissent, and CADY, J., who takes no part.

CARTER, Justice (dissenting).

Although I agree that the court of appeals wrongly concluded that the Thavenets could not object to Davis's counsel reading into evidence certain answers from Bradley Swyers' deposition, this does not aid the Thavenets in establishing error by the trial court. The only objection that the Thavenets' trial counsel lodged to the Thavenets' offer of Swyers' deposition answers was the following:

> BY THAVENETS' COUNSEL: Your Honor, Mr. Swyers was asked as a trucking expert to act as an accident reconstructionist and decide why the-why the accident took place and he did so in answer to an interrogatory. And while we were in deposition I asked him about his-his interrogatory answer and I asked him what he meant by certain legal terms, one of them being sudden emergency. And I–I think that he was acting outside of his area of expertise as a trucking expert when he decided that-when he used the legal term sudden emergency in his answer to interrogatories and that's why we want to read that in.

The district court's response was

> I'm going to permit the reading of those and if you are going to be-if you are going to be submitting his testimony I'm going to permit those questions and answers.... Sudden emergency is a matter we kicked around here a little bit and when I was doing the proposed instructions I even toyed with the idea of taking out the word sudden, coming up with another adjective, but it's a plain English term and I guess I fail to see the harm in using it in this testimony.

The deposition answer by the witness Swyers to which the objections of Thavenets' counsel related was as follows:

> Q. All right. Now, I've looked at the answer to your interrogatory, and in part of it you say that the Wilcox/Roadrunner truck jackknifed, creating a sudden emergency for Mr. Davis. I wonder if you

would define for me how you are using the term "sudden emergency." A. Because when he started to jackknife, the vehicle that was in front of Mr. Davis started to slow very rapid-or started to slow down very rapidly, which means Mr. Davis had to react to that very rapidly.

I agree with the district court that this answer was not the statement of a legal conclusion but rather a description of events using plain English. Consequently, I disagree with the conclusions in the majority opinion that the district court was required to rule favorably on the only objection that the Thavenets' counsel made to the reading of the Swyers' deposition answers by Davis's counsel.

The challenged ruling did not result in an improper admission of evidence. No portion of the Swyers' deposition was offered in evidence, so the challenged ruling was of no legal consequence. The situation is somewhat similar to that in which a pretrial ruling is made in a criminal case that, if defendant testifies, certain evidence may be admitted as impeachment. If the defendant fails to testify, the challenged impeachment evidence is never used. In refusing to posit error on such a pretrial evidentiary ruling, this court has stated that the issue thus arising is theoretical rather than actual. *State v. Davis,* 328 N.W.2d 301, 306–07 (Iowa 1982).

In the present case, the Thavenets have not extended their legal argument to matters other than questioning whether the district court's evidentiary ruling was correct. They do not assert how, if it was not correct, this served to prejudice them. The appellee, Davis, describes this failure as follows:

The jury did not even hear Swyers' opinions, which the Thavenets are complaining were inadmissible. The prejudice, if any, that would have been caused by the trial court's ruling is rehabilitated by the Thavenets' intervening decision to not read the Swyers' deposition. The Thavenets have not even argued that they were prejudiced by the fact that the jury was not allowed to hear, based on their own decision, the portion of Swyers' deposition which the Thavenets believe was admissible. The Thavenets cannot make such an argument as

almost all of the remaining testimony from Swyers' deposition was heard by the jury from other witnesses at trial, such as the Thavenets' trucking expert, Mr. Neal.

Because the Thavenets fail to assert in their written argument the manner in which they were prejudiced by the district court's evidentiary ruling on Davis's use of Swyers' deposition, they should be deemed to have waived any claim of prejudice. *See* Iowa R.App. P. 14(b)(3) (failure to state, argue, or cite authority in support of an issue may be deemed waiver of that issue); *Genetzky v. Iowa State Univ.,* 480 N.W.2d 858, 861 (Iowa 1992) (appellant who made no argument to support an issue waived that issue).

If we do the Thavenets' work for them by searching the record ourselves, the only favorable answer that Swyers gave with respect to the Thavenets' litigating position was the following:

Q. Could you be a little more specific with respect to that phrase? A. Well, in-in Mr. Davis's testimony or in his deposition that he's got here, you know, he was talking about following thirty to forty feet, running at I got approximately forty-five miles per hour. You know, at that speed following that close behind a vehicle was not giving him enough room for his stopping distance to actually be able to safely stop....

As the appellee urges in its brief, however, this opinion was cumulative of the testimony given by the Thavenets' own expert witness, Jay Neal.

The overturning of a jury verdict in a five-day civil trial and requiring that the case be tried anew should not be lightly undertaken. Any prejudice claimed by the Thavenets in the present case as a result of the district court's rulings concerning admissibility of portions of Swyers' deposition is far too speculative to warrant such action in the present case. I would affirm the judgment of the district court.

McGIVERIN, C.J., and HARRIS, J., join this dissent.