# IN THE SUPREME COURT OF IOWA

No. 20–0464

Submitted February 23, 2022—Filed March 18, 2022

**STATE OF IOWA,**

Appellee,

vs.

**JUSTICE MATHIS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Decatur County, Dustria A. Relph, Judge.

The defendant appeals his convictions for sexual abuse in the second degree, claiming the evidence was insufficient and the district court erred in instructing the jury the testimony of the complainant witnesses need not be corroborated to be accepted as true. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT VACATED AND CASE REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

**McDONALD, Justice.**

Justice Mathis was convicted of three counts of sexual abuse in the second degree, a class "B" felony, in violation of Iowa Code sections 709.1(3) and 709.3(1)(*b*) (2017). Mathis raises two claims in this direct appeal. First, Mathis claims there is insufficient evidence to support his convictions. Second, Mathis claims the district court erred in instructing the jury that "[t]here is no requirement that the testimony of an alleged victim of sexual offenses be corroborated." The court of appeals affirmed Mathis's convictions, and we granted Mathis's application for further review.

I.

We first address Mathis's challenge to the sufficiency of the evidence supporting his convictions for sexual abuse in the second degree. This court reviews sufficiency of evidence claims for the correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). In reviewing the sufficiency of the evidence, we are highly deferential to the jury's verdict. The jury's verdict binds this court if it is supported by substantial evidence. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Id.* In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)).

The trial record reflects the following. Mathis resided in a house with his grandmother, Brenda Atkins, and Brenda's husband (Mathis's stepgrandfather), Mickie Atkins. Mathis was raised by Brenda from birth and often referred to her as his mother. Brenda's daughter, Stephenie, lived near the Atkinses. Stephenie has five children, including a daughter, B.T., and a son, L.S. Between approximately October 2015 and November 2017, B.T. and L.S. visited the Atkins' home three to five days per week. During this time, B.T. was between seven and nine years old, and L.S. was between five and seven years old. Their visits to the Atkins' home often occurred after school or when Stephenie had to work evening shifts. Some of the visits were overnight.

The allegations of abuse surfaced in November 2017 when Stephenie walked in on L.S. and his younger sibling engaged in inappropriate sexual behavior. Upon inquiry, L.S. stated he learned the behavior from Mickie. Eventually B.T. and L.S. reported to their mother that both Mickie and Mathis had sexually abused them during their visits to their grandparents' house. Stephenie reported the sexual abuse allegations to the local police. The children were taken to a child protection center where they underwent forensic interviews and physical examinations. No physical evidence of abuse was found during the examinations.

Mickie and Mathis were both charged with sexual abuse in the second degree. Mathis was seventeen at the time the trial information was filed. He initially moved to transfer the case to the juvenile court but later withdrew the request. Although the allegations against Mickie and Mathis were different, and

although there were no allegations they acted in concert, Mickie and Mathis elected to be tried together. B.T. and L.S. were the primary witnesses at trial. Most of the testimony at trial related to Mickie's abuse of the children, and we see no need to discuss that testimony here.

With respect to Mathis, B.T. testified that on one occasion between October 2015 and November 2017, Mathis engaged in vaginal intercourse with her in Mathis's bedroom. B.T. could not identify the specific date when this occurred, but she testified it was sometime before she turned eleven. L.S. testified that Mathis "made [him] come upstairs a lot" to Mathis's bedroom. L.S. testified that when he was in Mathis's bedroom, Mathis engaged in anal intercourse with him. Although L.S. could not specify the exact number of times the abuse occurred or specify the exact dates upon which the abuse occurred, he testified that it occurred on more than one occasion between October 2015 and November 2017. Based on L.S.'s birthdate, the abuse occurred sometime before L.S. turned eight years old. L.S. testified he did not disclose the abuse sooner because Mathis threatened to punch him if he said anything.

Mathis testified, and he denied any inappropriate conduct with B.T. or L.S. Mathis testified that he did not want the children in his bedroom and asked them not to enter his bedroom because it was a "pigsty." He testified there were empty soft drink cans and bottles on the floor along with "fantasy blades," or swords, he collected. Because of the messy conditions, he believed the room would be dangerous to the children. Mathis testified that the children only spent any

length of time in his bedroom on one occasion, when Mathis and a friend were playing video games in the bedroom.

Brenda (Mathis's grandmother) also testified at trial. She testified that Mathis would become "annoyed" if the children tried to enter his bedroom. To the best of her knowledge, the children were never alone with Mathis. She was not always in the home, however. She testified that on at least five occasions between October 2015 and November 2017, she was hospitalized. She testified that it was possible B.T. and L.S. could have been alone with Mathis, without her knowledge, during these hospitalizations. She also testified that she had limited mobility that prevented her from ascending the stairs to Mathis's bedroom, meaning anything happening in Mathis's bedroom was out of her view.

Considered in the light most favorable to the State, substantial evidence supports the jury's verdict that Mathis committed sexual abuse against B.T. and L.S. Where, as here, the defendant does not object to the marshaling instructions, the marshaling instructions are the law of the case for purposes of reviewing the sufficiency of the evidence. *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). In this case, the marshaling instructions required the State to prove (1) that Mathis "performed a sex act upon" B.T. and L.S., and (2) that Mathis "performed the sex act while [the victim] was under the age of 12." The definition of "sex act" in the jury instructions included vaginal or anal penetration. Both B.T. and L.S. testified to specific instances where Mathis performed sex acts against them while they were under the age of twelve. The victims' testimony itself is sufficient to constitute substantial evidence of Mathis's guilt. *See* Iowa

R. Crim. P. 2.21(3); *State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021); *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). While Mathis flatly denied committing any of the alleged abuse, it was for the jury to resolve the conflicts between the testimony of Mathis on the one hand and B.T. and L.S. on the other. *See State v. Lacey*, 968 N.W.2d 792, 803 (Iowa 2021) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." (quoting *State v. Nichter*, 720 N.W.2d 547, 556 (Iowa 2006))).

Citing *State v. Smith*, 508 N.W.2d 101 (Iowa Ct. App. 1993), Mathis contends this is the rare case in which the testimony of the victims is so absurd that it must be rejected as a matter of law. We disagree. In *Smith*, the court of appeals found the testimony of a sexual abuse victim was "inconsistent, self-contradictory, lacking in experiential detail, and, at times, border[ed] on the absurd" and held the testimony was insufficient as a matter of law to support the conviction. *Id.* at 103. *Smith* is an outlier case. It has been criticized in the commentary, and it has not been followed in any sexual abuse case in Iowa since. The primary flaw in *Smith* is that it is inconsistent with the standard of appellate review of jury verdicts, which requires that the evidence be viewed in the light most favorable to the verdict and which requires deference to the jury's resolution of disputed factual issues. In any event, unlike *Smith*, there are no fatal contradictions or deficiencies in either B.T.'s or L.S.'s testimony. *Smith* does not afford Mathis any relief.

Mathis's remaining attacks on the sufficiency of the evidence are unavailing. Mathis argues that B.T.'s and L.S.'s testimony regarding Mickie's abuse was equivocal or contradictory at times. Even if true, this has no bearing on the children's testimony regarding Mathis's abuse. Mathis also posits that B.T. and L.S. could have erroneously attributed the abuse perpetrated by Mickie to Mathis. There is no evidence in the record, however, that the children conflated Mickie's and Mathis's actions, and Mathis did not even make such a claim during trial. Mathis also points to Brenda's testimony to support his argument that B.T. and L.S. did not spend any time in his bedroom. But Brenda also testified she was hospitalized on five occasions during the time the abuse occurred.

Regardless, all of these disputed fact issues were for the jury to resolve, and they did resolve them, adverse to Mathis. Appellate review of the jury's verdict is not the trial redux. In considering a challenge to the sufficiency of the evidence, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *Williams*, 695 N.W.2d at 28).

## II.

Mathis contends the district court committed reversible error when it instructed the jury, over his objection, that "[t]here is no requirement that the testimony of an alleged victim of sexual offenses be corroborated." This court reviews challenges to jury instructions for the correction of legal error. *State v.*

*Rohm*, 609 N.W.2d 504, 509 (Iowa 2000) (en banc). In conducting our review, we review the instructions "as a whole to determine their accuracy." *Donahue*, 957 N.W.2d at 10. A challenged instruction is "judged in context with other instructions relating to the criminal charge, not in isolation." *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996). An incorrect or improper instruction can be cured "if the other instructions properly advise the jury as to the legal principles involved." *Thavenet v. Davis*, 589 N.W.2d 233, 237 (Iowa 1999) (en banc).

Mathis first contends the noncorroboration instruction violated Iowa Code section 709.6. That Code provision states, "No instruction shall be given in a trial for sexual abuse cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense." In *State v. Kraai*, we recently resolved this issue contrary to the defendant's contention. 969 N.W.2d 487, 491 (Iowa 2022). In *Kraai*, we held a materially indistinguishable noncorroboration instruction did not violate Iowa Code 709.6 because the instruction did not actually caution the jury to use a different standard relating to the victim's testimony than that of any other witness. *Id. Kraai* is controlling on this point.

Mathis argues the instruction was nonetheless improper because the instruction unduly and unfairly emphasized the testimony of B.T. and L.S. On this point, we agree. In *Kraai*, we explained that "instructions that set apart, highlight, or accentuate the testimony of a particular witness or a particular piece of evidence are improper." *Id.* at 492. We held the noncorroboration instruction was improper in two respects. First, the noncorroboration instruction

set apart the victim's "testimony as not requiring corroboration in the absence of a symmetrical instruction regarding the noncorroboration of [the defendant's] testimony." *Id.* at 493. Second, the noncorroboration instruction particularized the victim's "testimony as not requiring corroboration in the absence of a universal instruction regarding the noncorroboration of all other witness testimony." *Id.* The same rationales apply in this case.

The remaining instructions in this case did not cure the error. "Jury instructions are not considered separately; they should be considered as a whole." *Id.* at 496 (quoting *State v. Davis*, 951 N.W.2d 8, 17 (Iowa 2020)). "If a particular instruction 'was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved.' " *Id.* (quoting *Thavenet*, 589 N.W.2d at 237). As in *Kraai*, the other instructions in this case did not cure the taint of the improper instruction. *See id.* For instance, the jury in this case was instructed that it could believe "all, part or none of any witness's testimony," but in deciding which testimony to believe, the jury evaluated B.T.'s and L.S.'s testimony "in light of the noncorroboration instruction that uniquely accentuated [their] testimony over all others." *Id.* The instruction regarding the State's burden to prove Mathis's guilt beyond a reasonable doubt also did not cure the error since the jury was "determining whether the State satisfied its burden in light of the noncorroboration instruction that uniquely accentuated" the children's testimony over all others. *Id.*

As in *Kraai*, we hold the district court erred in instructing the jury that "[t]here is no requirement that the testimony of an alleged victim of sexual

offenses be corroborated." In the absence of any other instruction regarding the uncorroborated testimony of other witnesses, the instruction unduly and improperly emphasized the complainant witnesses' testimony.

## III.

Having determined that the noncorroboration instruction in this case was erroneous, we must determine whether the error warrants reversal. Once again, we draw the applicable principles from our decision in *Kraai*:

> "Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party." *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) (quoting *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015)). When a court erroneously gives or refuses a jury instruction, "we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice." *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010). "When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). The presumption of prejudice is overcome when the jury received "strong evidence" of a defendant's guilt. *See Plain*, 898 N.W.2d at 817.

*Kraai*, 969 N.W.2d at 496–97.

Applying these principles in *Kraai*, we concluded the instructional error did not require reversal. *Id.* at 497–99. The record in *Kraai* included strong evidence of the defendant's guilt in the form of "substantial corroboration" of the victim's testimony. *Id.* at 497. The victim's testimony was substantially corroborated by physical evidence found in the home, including a pair of pants with a hole in the crotch, which the victim testified the defendant wore during the abuse, as well as a large collection of pornography, which the victim testified

the defendant showed her during the abuse. *Id.* at 497–98. The most compelling evidence in *Kraai* was the victim's knowledge of the defendant's pierced genitalia, which we stated was "strongly corroborative" of the victim's testimony since it was "unlikely [the victim] would know of this intimate detail in the absence of sexual abuse." *Id.* at 498. Because the victim's testimony was substantially corroborated, the erroneous noncorroboration instruction "pertained to a moot point." *Id.* at 499 (quoting *Garza v. State*, 231 P.3d 884, 891 (Wyo. 2010)). We thus held the improper instruction did not result in prejudice to the defendant.

We cannot reach the same conclusion in this case. While there is sufficient evidence to sustain the defendant's convictions, there is not strong evidence of guilt sufficient to overcome the presumption of prejudice. Indeed, the State does not even argue harmless error. *See, e.g., State v. Dudley*, 856 N.W.2d 668, 678–79 (Iowa 2014) (declining to find an error harmless where the State does not make the argument). In this case, unlike *Kraai*, neither B.T.'s nor L.S.'s testimony is corroborated by other evidence. Both children testified to separate instances of sex abuse, but neither witnessed nor testified about the sex abuse allegedly committed against the other child. Both children eventually told their mother about the sexual abuse, but there is no evidence their mother independently corroborated the children's accounts of abuse. And there is no physical evidence of any sort corroborating the children's testimony.

The noncorroboration instruction in this case thus did not pertain to a moot point; instead, the noncorroboration instruction in this case was a focal point. During closing argument, the prosecutor repeatedly referenced the

noncorroboration instruction in advocating for the convictions. For example, the prosecutor argued to the jury: "The judge instructed you . . . that you don't need anything more than [L.S. and B.T.'s] word. If you believe their testimony . . . that's good enough to find [Mathis] guilty." The prosecutor then argued this case came down to credibility and who the jury believed. In determining who to believe, the prosecutor reminded the jury that the children's testimony did not need to be corroborated:

> But if you believe that I have proved that checklist beyond a reasonable doubt, those two elements for each of the crimes, the defendants are guilty. And that I can prove solely with the testimony of [B.T. and L.S.]. If you believe their testimony, we have proven the charges beyond a reasonable doubt.

These were all correct statements of the law, but "[i]n the absence of any other instruction regarding the uncorroborated testimony of other witnesses, the instruction unduly emphasized the complainant witness's testimony." *Kraai*, 969 N.W.2d at 496. The instruction prejudiced Mathis's rights.

IV.

When a court erroneously gives or refuses a jury instruction, "we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice." *Hanes*, 790 N.W.2d at 551. The record in this case does not affirmatively establish the absence of prejudice, and the State does not contend otherwise. While there is sufficient evidence to sustain the convictions, there is not strong evidence of the defendant's guilt, and the improper instruction was a focal point of the State's case. We vacate Mathis's convictions and remand the case to the district court for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT VACATED AND CASE REMANDED.**