# IN THE COURT OF APPEALS OF IOWA

No. 21-0457
Filed July 20, 2022

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**ADAM SLADE ROE,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Scott County, Mark R. Fowler, Judge.

　　　　Adam Roe appeals from his convictions and sentences for criminal mischief and assault. **CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**

　　　　Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

　　　　Considered by Tabor, P.J., Greer, J., and Vogel, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**VOGEL, Senior Judge.**

A dispute between familial neighbors resulted in Adam Roe being convicted of criminal mischief in the second degree, assault with intent to inflict serious injury, and two counts of assault. He appeals his convictions and sentences, arguing (1) the district court erred by instructing the jury to consider the "highest value of the property" for the criminal-mischief charge; (2) the evidence was insufficient to support his conviction for criminal mischief in the second degree; (3) the evidence of identity was insufficient to support his conviction for the three assault charges; (4) he did not effectively waive his right to in-person sentencing; (5) the written sentencing order does not reflect the court's intention to suspend his fines; and (6) the court illegally imposed various inapplicable surcharges. We reject his challenges to the jury instructions and the sufficiency of the evidence, and we affirm his convictions. However, we agree the record does not contain his waiver as required for remote sentencing. We also agree the court was without authority to impose certain surcharges. Therefore, we remand for resentencing, do not address the suspension of fines, and direct the court to not impose certain surcharges on resentencing.

## I. Background Facts and Proceedings.

Adam Roe lives in a house in Blue Grass, which is next-door to the home of his cousin, Dale, and his cousin's wife, Darla. This dispute involves a well located near the property line between the two houses. Dale and Darla testified the well belongs to them and is on their property and they maintain it to supply water to their house. They further testified that, a couple years earlier, the well

also supplied water to Roe's house; however, because Roe refused to help pay for the power supply and maintenance of the well, Roe's connection was shut off.

Darla testified that on June 8, 2019, she discovered several bags of concrete mix and rocks had been thrown into the well. She reviewed video from their security camera and saw Roe throwing bags of concrete mix and rocks into the well hours earlier. She called the police to report the damage and then began cleaning the well with help from Dale and his brother. While cleaning the well, Darla testified she heard a noise from Roe's garage and then saw a football-sized rock coming from Roe's property that narrowly missed hitting her. Surveillance video shows the rock coming from the roof of Roe's garage. Dale testified that, after they cleaned the well, they replaced the sump pump, valves, and connections.

Later that day, a sheriff's deputy conducted a traffic stop of Roe based on the earlier events. The deputy testified—and video from his body camera confirms—Roe "seemed very agitated," "he was making a lot of furtive movements," and "his tone was very loud" during the stop. The deputy told Roe they had video of him throwing objects into the well, and Roe responded, "I know. I was gonna plug and fill it." The deputy also said they had video of a rock coming from his property and almost hitting Darla. Roe denied throwing a rock and claimed the video must be flipped to look like the rock came from his property and other people—including an unnamed "kid"—were throwing rocks at his house instead. The deputy searched Roe's vehicle and found a bag of concrete mix with a receipt and picking list for ten bags of similar concrete mix dated the prior day. The deputy also found a bottle of ammonia and a bottle of toilet cleaner with a receipt for both

dated earlier that day. When asked about the ammonia and toilet cleaner, Roe said he was going to pour the substances in the well to kill Dale and Darla. Roe made many other statements during the stop about his intentions to kill Dale and Darla.

Roe was charged and proceeded to a jury trial.[1] During trial, the owner of a well-service business, who replaced a well pump for Dale and Darla in 2017, testified about an estimate he provided to clean and repair the well; however, he acknowledged the business did not perform any of the listed work. The written estimate, admitted without objection, showed the business would have charged $977.00 to clean and chlorinate the well, up to an additional $3357.10 to repair and replace equipment depending on the work needed, and the entire estimate, except for $30.00 of the cleaning charge, was subject to 7% state sales tax.

The jury found Roe guilty of criminal mischief in the second degree, assault with intent to inflict serious injury against Darla, and assault against Dale and his brother. During a remote sentencing hearing, the district court sentenced Roe to an indeterminate term of incarceration not to exceed five years for criminal mischief, 365 days for assault with intent to cause serious injury, and thirty days for each assault charge, run consecutively. The court suspended all but ninety days for the assault-with-intent-to-cause-serious-injury charge, placed Roe on probation for three years, waived category "B" restitution, and imposed various fees, fines, and surcharges. Roe appeals.

---

[1] Prior to trial, Roe filed a written guilty plea for possession of marijuana as part of this proceeding. He does not appeal the conviction or sentence for this possession charge.

## II. Jury Instructions.

Roe begins by challenging a jury instruction for the criminal-mischief charge. "[W]e review challenges to jury instructions for correction of errors at law." *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018) (alteration in original) (quoting *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016)). "In doing so, we consider the jury instructions as a whole rather than in isolation to determine whether they correctly state the law." *Id.* at 242. "An incorrect or improper instruction can be cured 'if the other instructions properly advise the jury as to the legal principles involved.'" *State v. Kraai*, 969 N.W.2d 487, 490 (Iowa 2022) (quoting *Thavenet v. Davis*, 589 N.W.2d 233, 237 (Iowa 1999)). An erroneous instruction does not warrant reversal unless prejudice resulted. *Benson*, 919 N.W.2d at 241. "Prejudice results when jury instructions mislead the jury or materially misstate the law." *Id.* at 241–42. "[W]e presume prejudice and reverse unless the record affirmatively establishes there was no prejudice." *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010).

Criminal mischief is "[a]ny damage, defacing, alteration, or destruction of property . . . when done intentionally by one who has no right to so act." Iowa Code § 716.1 (2019). At the time of the events here, criminal mischief in the second degree occurred when "the cost of replacing, repairing, or restoring the property . . . exceeds one thousand dollars but does not exceed ten thousand dollars."[2] *Id.* § 716.4(2). Accordingly, the criminal-mischief-degree instruction told

---

[2] The legislature subsequently amended section 716.4(2) to define criminal mischief in the second degree as occurring when the affected property "exceeds one thousand five hundred dollars but does not exceed ten thousand dollars."

jurors, "Criminal Mischief in the Second Degree occurs when the cost of replacing or repairing the property is more than $1000 but not more than $10,000." This instruction on the verdict form also told jurors to "check the blank next to the appropriate value," and the verdict form allowed the jury to check a blank for finding "the cost of repair, replacement, restoration of the property damaged, destroyed, defaced, altered by the defendant, Adam S. Roe . . . [i]s more than $1000 but not more than $10,000."

The jury instructions also included an instruction on value:

> The value of property is its highest value by any reasonable standard at the time that it is damaged. Reasonable standard includes but is not limited to market value within the community, actual value, or repair, or replacement value.

Roe notes this instruction largely follows the definition of "value" for purposes of theft. *See* Iowa Code § 714.3(1) ("The value of property is its highest value by any reasonable standard at the time that it is stolen. Reasonable standard includes but is not limited to market value within the community, actual value, or replacement value."). Because the degree of criminal mischief is determined by "the cost of replacing, repairing, or restoring the property" rather than the value of the property, *see id.* § 716.4(2), Roe argues the court erred by instructing the jury on value.

Even if we assume the court erred by including an instruction on value, we are satisfied no prejudice resulted.[3] Both the criminal-mischief-degree instruction

---

2019 Iowa Acts ch. 140, § 19. Roe does not argue the 2019 amendment applies here.

[3] To support his position, Roe cites to our unpublished case *State v. Smith*, No. 13-1439, 2014 WL 3748295, at *2–5 (Iowa Ct. App. July 30, 2014), wherein we reversed a criminal-mischief conviction due to a similar instruction defining "value."

and the verdict form correctly focused on the cost *to repair or replace* the damaged property, not the value of the well. Additionally, the evidence in the record related to the cost *to repair* the well and not the value of the well. Specifically, the well-service business provided a detailed estimate *to repair* the well that was itemized to allow the jury to calculate the cost of repair based on the work the jury found needed to be performed. Therefore, reading the instructions as a whole, we find no resulting prejudice and reject Roe's challenge to the jury instruction on value.

## III. Sufficiency of the Evidence.

Roe also challenges the sufficiency of the evidence supporting his criminal-mischief conviction and his three assault convictions. "We review the sufficiency of the evidence for correction of errors at law." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) (quoting *State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021)). "The jury's verdict binds this court if the verdict is supported by substantial evidence." *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences

---

However, Roe's position differs from *Smith* in two key ways. First, the verdict form in *Smith* directed the jury to consider the property's "value"; Roe's verdict form does not mention "value" but rather "the cost of repair, replacement, restoration of the property damaged, destroyed, defaced, altered." *See Smith*, 2014 WL 3748295, at *3. Second, the record in *Smith* contained conflicting evidence on the cost to repair or replace the damaged property, as the victim testified to obtaining an estimate for an amount much higher than what she actually paid for labor and materials. *See id.* at *4–5. Here, there was no conflict as to the cost to repair the well, as Dale and Darla immediately performed all labor themselves before the concrete mix could firmly set and then obtained a single estimate after the fact for materials to clean, repair, and replace necessary parts along with labor and their lost wages.

and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)).

*A. Criminal mischief in the second degree*

Roe argues the evidence is insufficient to support finding he committed criminal mischief in the second degree. Specifically, he argues the evidence does not support finding the cost to repair the well was more than $1000.00 but less than $10,000.00. *See* Iowa Code § 716.4(2).

As stated above, the well-service business provided an estimate for the cost to repair the well. Roe notes the business's owner testified he never performed the listed repairs and he does not know what—if any—equipment was actually damaged. Darla testified the family began doing the repair work themselves as soon as they saw the damage because they "didn't want the cement to dry up." Dale testified as to the work the three of them did to repair the well, including needing a "[f]ew hours" to clean the well and replace the sump pump, valves, and connections. He also testified the well was in good working condition before these events.

At a minimum, the record is sufficient to find cleaning and chlorinating the well was part of the cost of repair. The estimate shows cleaning and chlorinating the well cost $977.00. Of this amount, $947.00 was subject to 7% sales tax, totaling an additional $66.29. Thus, the cost of cleaning and chlorinating the well with sales tax was $1043.29, exceeding the $1000.00 minimum for criminal mischief in the second degree.

Furthermore, Dale testified he replaced the damaged sump pump and other equipment. While the cost of this equipment was not in the record, the business

owner, who was familiar with this well, testified a sump pump for the well would cost at least $90.00 to $100.00. Roe notes Dale testified he already had all the needed equipment on hand. However, nothing in the statute requires the factfinder to find equipment used in a repair cost nothing simply because the equipment was already on hand. *See id.* § 716.4(2). To the extent Roe challenges the credibility of the witnesses and other evidence establishing the extent and cost of the repairs, such matters are for the jury to decide. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). Therefore, the evidence is sufficient to support finding the cost to repair the well was more than $1000.00 but less than $10,000.00, thus supporting Roe's conviction for criminal mischief in the second degree.

*B. Assault*

Roe next challenges the sufficiency of the evidence supporting his conviction for the three assault charges. Specifically, Roe argues the evidence is insufficient to prove he threw the rock at Dale, Darla, and Dale's brother while they were working on the well. *See State v. Jensen*, 216 N.W.2d 369, 374 (Iowa 1974) ("Identity is an element of a criminal offense which the State must prove beyond a reasonable doubt."). He notes no one saw who threw the rock and he told the deputy he did not throw the rock.

The video confirms the rock was thrown from the roof of Roe's garage. Dale's brother testified, "I heard something come over my right shoulder, I looked up and here's this big piece of concrete coming out and my sister-in-law was standing there and I couldn't get to her but I hollered at her to look out." He claimed

the direction the rock was coming from was Roe's house, "across the roof." To place Roe at the scene, Dale testified he saw Roe at his house around the time the rock was thrown, both before and after the throw. Roe had previously thrown rocks at Dale and Darla's property hours before the assault, having been caught on video throwing rocks into the well. When the deputy stopped Roe hours after the assault, Roe verbalized hostility toward Dale and Darla and repeatedly threatened to kill them. The jury could legitimately infer from this evidence that Roe threw the rock, and there is substantial evidence to support all three assault convictions. *See State v. Jones*, 967 N.W.2d 336, 342 (Iowa 2021) ("[T]he relevant inquiry is whether a fact finding is a legitimate inference that may fairly and reasonably be deduced from the record evidence." (quoting *State v. Ernst*, 954 N.W.2d 50, 59 (Iowa 2021))).

**IV. Sentencing.**

Finally, Roe challenges his sentence. When a sentence is within the statutory limits, we review the sentence for an abuse of discretion. *State v. Seats*, 865 N.W.2d 545, 552 (Iowa 2015). When a defendant challenges the legality of a sentence on nonconstitutional grounds, we review for correction of errors at law. *Id.* When a defendant challenges the legality of a sentence on constitutional grounds, we apply de novo review. *Id.*

Roe argues the court violated his rights by sentencing him in a remote proceeding without obtaining a written or on-the-record waiver from him. "A criminal defendant has a constitutional and statutory right to be personally present at every stage of trial." *State v. Wise*, 472 N.W.2d 278, 279 (Iowa 1991); *see also* Iowa R. Crim. P. 2.27(1) ("In felony cases the defendant . . . shall be personally

present at every stage of the trial including . . . the imposition of sentence . . . .").

A criminal defendant has the right to personally appear for sentencing because, "[No] modern innovation[ ] lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation." *State v. Craig*, 562 N.W.2d 633, 636 (Iowa 1997) (alterations in original) (quoting *Green v. United States*, 361 U.S. 301, 304 (1961)). Nevertheless, the defendant may waive this right to appear for sentencing by executing a knowing, intentional, and unambiguous waiver. *See State v. Lumadue*, 622 N.W.2d 302, 304 (Iowa 2011). Additionally, our supreme court issued a series of supervisory orders in response to the COVID-19 pandemic that, in part, allowed a district court to hold sentencing via videoconference or telephone if the defendant "(a) execute[s] a written waiver or (b) make[s] a waiver on the record." Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* ¶ 16 (Nov. 24, 2020).

> The district court's written sentencing order states:
>
> All parties, as well as the Court and the court reporter, appeared via teleconference or by telephone. After being engaged in colloquy with the Court, the defendant waived his right to a hearing in open court and agreed to proceeding via teleconference and/or telephone due to the COVID-19 pandemic. *The Court finds that defendant understands his rights and that this waiver is knowingly, voluntarily, and intelligently made.*

(Emphasis added.) Despite this pronouncement, the sentencing transcript does not show Roe waived his right to be present for sentencing. In fact, the sentencing transcript does not make any reference to a remote proceeding, save for the title page that notes, "Hearing was held via teleconference pursuant to Iowa Supreme

Court supervisory orders regarding the COVID-19 pandemic." The record also does not contain a written waiver of Roe's right to be present for sentencing.

This court recently considered a similar argument where the district court "explained the [sentencing] hearing was being conducted remotely as a result of the supervisory orders" and noted it "separately asked [the defendant] and all counsel if they were agreeable to participating remotely, and each answered in the affirmative." *State v. Emanuel*, 967 N.W.2d 63, 69 (Iowa Ct. App. 2021). We vacated the sentence and remanded for resentencing because the record did not show the defendant "knew of his continuing right to in-person sentencing," and thus his waiver of in-person sentencing was invalid. *Id.* The State distinguishes Roe's claim by arguing the sentencing order shows substantial compliance with the requirement that Roe's waiver was knowing, intentional, and unambiguous. *See State v. Feregrino*, 756 N.W.2d 700, 706 (Iowa 2008) (finding an "on the record" waiver requires "some in-court colloquy or personal contact between the court and the defendant, to ensure the defendant's waiver is knowing, voluntary, and intelligent," and "substantial compliance" is "acceptable" (quoting *State v. Liddell*, 672 N.W.2d 805, 812, 814 (Iowa 2003))). However, we have no colloquy in the record to evaluate substantial compliance. The COVID-19 pandemic imposed a tremendous burden on our district courts, and Roe may very well have attempted to waive his right to in-person sentencing outside the record. But the absence of a written or on-the-record waiver violates the supreme court's supervisory order. Our supreme court has advised "that trial judges leave no room for doubt that a defendant has been given the opportunity to speak regarding punishment." *Craig*, 562 N.W.2d at 637. Thus, the record does not contain a

required waiver of in-person sentencing, and we cannot find a lack of prejudice from this omission. *See Emanuel*, 967 N.W.2d at 69 ("We reject the State's harmless-error argument, as there is no way to tell what the outcome would have been had the sentencing judge and [the defendant] been face to face."). Therefore, we vacate Roe's sentences and remand for resentencing.

Roe notes a discrepancy between the oral pronouncement of judgment and the written judgment entry in the record as to whether the district court suspended his fines. Because we are vacating the sentences and remanding for resentencing, we do not address the suspended fines and leave the issue to the court to consider at resentencing.

Roe also argues the court illegally imposed the law enforcement initiative surcharge, which was repealed prior to his sentencing, and the domestic and sexual abuse surcharge, which was not applicable to any of his convicted offenses. The State agrees the court lacked authority to impose these surcharges, and we find the same. Therefore, in resentencing the district court shall not impose any law enforcement initiative surcharge or domestic and sexual abuse surcharge.

## V. Conclusion.

Any error in the jury instructions did not result in prejudice, and the evidence is sufficient to support Roe's convictions for criminal mischief in the second degree and all three assault charges, so we affirm his convictions. However, the record does not contain a required waiver of in-person sentencing. Therefore, we vacate Roe's sentences and remand for resentencing, do not address the suspension of

fines, and direct the court to not impose any law enforcement initiative surcharge or domestic and sexual abuse surcharge on resentencing.

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**