Everett OSBORN, Appellant,

v.

MASSEY–FERGUSON, INC., Appellee.

No. 61765.

Supreme Court of Iowa.

April 23, 1980.

·John Diehl, Ben Clayton and Roger D. Williams of Diehl, Clayton, Cleverly & Knopf, Newton, for appellant.

Richard G. Langdon of Herrick, Langdon & Langdon, Des Moines, and Herbert S. Selby of Selby, Updegraff & Smith, Newton, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, UHLENHOPP, and McGIVERIN, JJ.

McGIVERIN, Justice.

Plaintiff Everett Osborn appeals from the judgment entered following a directed jury verdict in favor of defendant Massey-Ferguson, Inc., in this negligence and products liability case arising from a grain combine accident. We reverse and remand for a new trial.

The following issues are presented for our review:

1. Whether defendant may object at trial to plaintiff's reading of certain portions of a deposition defendant took, when defendant did not object at the time the deposition was taken;

2. Whether the court erred in sustaining defendant's objections to the testimony and opinions of plaintiff's causation expert, Dr. Donald Madsen; and

3. Whether a verdict was properly directed against plaintiff.

Plaintiff Everett Osborn purchased a used 1969 Massey-Ferguson combine model 410 in September 1970. The combine had been manufactured by defendant Massey-Ferguson, Inc. Plaintiff used the combine in 1970 and again in 1971. On the night of September 30, 1971, plaintiff was driving the combine on a country road while returning home after he had combined beans for approximately four and one-half hours. Osborn heard a "thumping" from beneath the floorboard of the cab, which is on the left side of the machine. The combine immediately veered to the left, went down a steep ditch, and turned over on its right side, damaging the machine and injuring plaintiff. Osborn had tried to steer the combine to the right, away from the ditch, but the machine would not steer. An investigation shortly after the accident by plaintiff's sons showed that the main drive belt was broken and the nearby hydraulic steering line was severed. The belt and line were located on the left side of the combine just below the cab. The physical damage was almost exclusively to the right side of the combine. The right rear wheel was broken off and was found underneath the combine at the bottom of the ditch. One or two of the J-bolts holding the right front dual wheel had broken off, with the other J-bolts remaining fastened at the top of that wheel. The tire on the right front drive wheel was flat.

Plaintiff's petition was in two divisions. In one division he asserted defendant had been negligent in its manufacture and design of the combine, causing the machine's steering mechanism to fail with resultant injuries to plaintiff. A second division contained a products liability claim, alleging that the design of the combine's hydraulic steering mechanism was defective.

Plaintiff's theory at trial was that while the combine was on the road, the main drive belt on his self-propelled combine broke and that belt severed the nearby hydraulic line, which is connected to the steering of the combine. This resulted in a loss of fluid in the hydraulic line, which in turn caused a failure of steering. Plaintiff, therefore, lost control over the steering and the combine veered to the left and down into the ditch.

Both divisions of his petition and his offered evidence were based on a claim of defective design by defendant in placing the main drive belt too close to the hydraulic line without adequate shielding to prevent severance of the line should the main drive belt break.

Plaintiff did not claim defective parts were involved and the drive belt and hydraulic line were not preserved or placed into evidence.

Prior to trial, defendant took the deposition of Dr. Norval J. Wardle, an expert who had been consulted by plaintiff and who was expected to testify for plaintiff at trial. Osborn attempted to have the deposition read into evidence in its entirety; however, defendant objected and various portions were not allowed into evidence by the trial court.

During trial, Dr. Donald Madsen an expert witness for plaintiff testified. The trial court sustained defendant's objections to many of Dr. Madsen's expert opinions and, accordingly, the doctor was not allowed to give his opinion as to the cause of the accident.

At the close of plaintiff's evidence, the court directed a verdict in favor of defendant on the basis that there had been no showing that plaintiff's theory was as probable or more probable than any other theory of what happened.

Other facts will be stated later as necessary for an understanding of the issues raised for review.

I. *Objection at trial to the reading of certain portions of a deposition not objected to at the time of the taking of the deposition.* Defendant took the deposition of Dr. Norval J. Wardle in 1973 after suit was

filed. When the deposition was taken, the parties stipulated that the deposition "may be used at trial." Only defendant questioned Dr. Wardle. Plaintiff did not ask any questions.

Dr. Wardle did not testify at trial in 1978. He was then living in Logan, Utah. Iowa R.Civ.P. 144(c). Plaintiff sought to introduce into evidence at trial the entire deposition in question-and-answer form. Defendant objected to the use of any portion of the deposition by plaintiff.

The court made a general ruling, subject to the parties making their record as to specific questions and answers. The court stated that it believed it was bound by Iowa R.Civ.P. 144 in that it could not exclude the whole deposition. However, the court did sustain defendant's objections to twelve questions and answers and excluded opinions and conclusions by the deposed witness, which were bottomed on matters contained in certain letters that were not in evidence, because such opinions were without proper foundation and based on hearsay.

Most of the deposition was ultimately read into evidence; however, significant portions were excluded by the court as a result of defendant's objections. Plaintiff assigns this ruling as error.

The parties make several arguments bearing on the correctness of the court's ruling. We mention only some of them.

■ A. Defendant asserts that Dr. Wardle's deposition was intended only for discovery, and therefore not admissible at trial. We are unable to agree. There is no basis in law (Iowa Rules of Civil Procedure) or fact to support such a proposition. The Iowa Rules of Civil Procedure make no distinction between discovery depositions and depositions to be used at trial. Iowa

R.Civ.P. 140–58. We are not concerned here with a deposition to perpetuate testimony under Iowa R.Civ.P. 159–66.

The Court properly allowed the deposition into evidence under the authority of Iowa R.Civ.P. 144(c).[1]

■ We believe "that one party may introduce a deposition which was taken by his adversary, but which [the adversary] declines to introduce." *Citizens' Bank v. Rhutasel*, 67 Iowa 316, 319, 25 N.W. 261, 262 (1885); *Justis v. Union Mutual Casualty Company*, 219 Iowa 213, 215, 257 N.W. 581, 582 (1934); *Brown v. Byam*, 65 Iowa 374, 380–81, 21 N.W. 684, 688 (1884) (although the cases cited for this proposition were decided prior to the adoption of the deposition rules in Iowa, we believe the proposition equally applies to the present Iowa Rules of Civil Procedure). *See also* 3 B. Jones, *Evidence* § 18:30, at 509 (6th ed. 1972).

Having concluded plaintiff could use the Wardle deposition at trial under rule 144(c), we turn to other assertions made.

B. Plaintiff contends the use of the Wardle deposition and defendant's objections at trial to the deposition questions and answers were subject to the provisions of Iowa R.Civ.P. 158(d) and (e). Those rules state:

*(d) Taking Deposition.* Errors or irregularities occurring during an oral deposition as to any conduct or manner of taking it, or the oath, or the form of any question or answer; and any other errors which might thereupon have been cured, obviated or removed, are waived unless seasonably objected to when it is taken.

*(e) Testimony.* Except as above provided, testimony taken by deposition may be objected to at the trial on any ground which would require its exclusion if given

---

1. Iowa R.Civ.P. 144 provides:

Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial or at an interlocutory hearing or upon the hearing of a motion in the same action against any party who appeared when it was taken, or stipulated therefor, or had due notice thereof, either:

. . . . . .

*(c)* For any purpose, if the court finds that the offeror was unable to procure deponent's presence at the trial by subpoena; or that deponent is out of the state or more than one hundred miles distant from the trial, and such absence was not procured by the offeror; or that deponent is dead, or unable to testify because of age, illness, infirmity or imprisonment.

by a witness in open court, and objections to testimony, or competency of a witness, need not be made prior to or during the deposition, unless the grounds thereof could then have been obviated or removed.

Specifically plaintiff claims that the plain language of rules 158(d) and (e) precluded defendant from objecting at trial to the Wardle testimony because the grounds of the sustained objections could easily have been "obviated or removed" at the time of the deposition. Plaintiff also says that if defendant had moved to strike Dr. Wardle's opinions and conclusions at the deposition on the grounds defendant asserted at trial, the two report letters could then have been marked as exhibits, a hypothetical question could have been framed, and a foundation could thus have been established for Wardle's opinions and conclusions.

Plaintiff cites and relies on federal cases decided pursuant to the Federal Rule of Civil Procedure 32 after which he says Iowa R.Civ.P. 158 is patterned.

Defendant replies that under plaintiff's theory a party would be required to object to his own questions at a deposition or else not be allowed to object when such questions and answers are offered against him at trial; and no one should be required to object at the deposition to his own questions.

■■■ We agree with defendant based on the following reasons and authorities. Iowa R.Civ.P. 145(b) states that "[a] party does not make deponent his own witness by taking his deposition . . .." Therefore, defendant did not make Wardle defendant's witness by procuring his deposition. The examiner asking a deposition question has no right to object to his own question because "[t]he initiative in excluding improper evidence is left entirely to the opponent . . .." 1 J. Wigmore, *Evidence* § 18, at 321 (3d ed. 1940). Osborn had the duty at deposition to object to defendant's questions.

■■■ When Osborn offered the Wardle deposition at trial under rule 144(c), he made the deponent his witness under rule 145(b).[2]

■■■ We agree with the following from 26A C.J.S. *Depositions* § 100, at 455:

[A] party offering a deposition . . . cannot urge objections to any portion thereof offered by him, although a deposition thus offered by one party is subject to any valid objection by the other party, notwithstanding the objecting party may have taken the deposition or propounded the questions or interrogatories objected to, since *it cannot be inferred from a party's procuring a deposition to be taken that he is bound to admit the statements contained in it.*

(Footnotes omitted and emphasis supplied.) Similar language appears in *Graves v. Boston & M. R. R.*, 84 N.H. 225, 227, 149 A. 70, 71 (1930). Therefore, when Osborn offered the Wardle deposition, defendant had the right to object to the deposition questions and answers because defendant was not bound to admit Wardle's answers just because defendant took the deposition.

We also find assistance in *State v. McCall*, 158 Kan. 652, 654, 149 P.2d 580, 581 (1944). In that case a criminal defendant had caused a pretrial deposition of a witness to be taken. At trial the state offered the deposition in evidence. Defendant objected because it was not signed by the witness and was therefore incompetent. The state relied on a statute requiring that objections to a deposition be made prior to trial. Defendant had made no such objections. The court answered that contention by saying:

It is clear that the section relied upon by counsel for the state refers to an objection to be made by a party other than the party taking the deposition, not to a case of this kind where the deposition is used

---

**2.** Iowa R.Civ.P. 145(b) states in part:
   A party introducing a deposition [under rule 144(c)] makes the deponent his witness, but

may contradict his testimony by relevant evidence.

by the state against one on trial for a crime.

*Id.*

■ The above authorities lead us to believe that in the situation where the opponent (plaintiff) offers at trial deposition questions propounded by the other party (defendant) and answers received thereto, then the other party has the right to object at trial under the "rules of evidence," rule 144, to any such questions or answers. This right is without regard to the provisions of rules 158(d) and (e), which we believe apply only to the situation where the propounder of the deposition questions is offering the deposition into evidence at trial; however, those rules apply only as to that portion of the deposition wherein he asked the questions. Therefore, rules 158(d) and (e), did not operate to restrict defendant's right to object at trial, on any grounds, to the Wardle deposition questions defendant propounded and the answers thereto.

Under our rules every deposition has a dual purpose, to discover and possibly to be used at trial as evidence. Our decision recognizes both of these purposes and defines the rights of the parties so as not to discourage the taking of depositions for discovery purposes.

We hold it was proper for defendant to make objections at trial to the questions and answers in the Wardle deposition, which was taken by defendant but offered by plaintiff. Osborn, however, does not challenge the merits of the trial court's ruling sustaining the various objections made by defendant, and we make no determination on that issue.

We find no error in plaintiff's first assignment.

II. *Exclusion of the expert witness testimony.* Plaintiff contends the court erred in sustaining defendant's objections and excluding much of the expert opinion testimony of Dr. Donald H. Madsen. As a result, Dr. Madsen was precluded from expressing his opinion on a number of matters: the cause of the accident; whether the hydraulic line was severed before or after the combine went off the road; whether the

design in the location of the hydraulic line was defective or dangerous; and whether safer alternative locations of the hydraulic line were available. Defendant objected on grounds that Dr. Madsen lacked the qualifications to testify as an expert and that there was no proper foundation for such opinions since plaintiff had not otherwise established the pertinent sequence of events (whether the hydraulic line broke before the combine left the road) and any such opinions would therefore be only speculation or conjecture. Plaintiff presented any such excluded opinions by offers of proof.

The principles governing opinion evidence have been stated in *Haumersen v. Ford Motor Company*, 257 N.W.2d 7, 11 (Iowa 1977), and cases cited therein.

> Iowa is committed to a liberal rule which allows opinion testimony if it is of a nature which will aid the jury and is based on special training, experience, or knowledge with respect to the issue in question. The receipt of such evidence rests largely in the discretion of the trial court and its ruling will not be disturbed absent manifest abuse of that discretion. The court's discretion is not unlimited. The facts upon which the expert bases his opinions must be sufficient to enable the witness to express an opinion which is more than mere conjecture. Irrespective of the manner in which the opinion question is phrased, the opinion remains such and the trier of fact is at liberty to reject it. Only in clear cases of abuse is admission of such evidence found prejudicial.

*Id.* (citations omitted).

■ We review the record in order to determine if the trial court abused its discretion in refusing to allow Dr. Madsen to testify as to his above-stated opinions. It is necessary to determine if Dr. Madsen had sufficient credentials to be qualified as an expert witness to testify as to his opinion on the matters excluded by the trial court, and whether there was a sufficient factual foundation for such opinions, which would take the excluded opinions out of the realm of mere speculation and conjecture.

We believe Dr. Madsen qualified as an expert witness for purposes of testifying as to his opinion on the matters excluded by the trial court by virtue of his study, training, experience, and special knowledge. *Dougherty v. Boyken*, 261 Iowa 602, 605, 155 N.W.2d 488, 490 (1968). He was a professor of energy engineering, which includes all phases of mechanical engineering, at the University of Iowa where he had taught engineering since 1954. He received a Ph.D. in engineering in 1953, had taught mechanical engineering at the University of Iowa and other academic institutions, and worked in industry in engineering capacities. He has taught and been involved in industrial projects involving safety in machine design, belt design, fluid flow, and plumbing systems for vehicles. He was familiar with design and placement of tubing belts and pulleys in machines from a mechanical engineering standpoint. He has been a registered professional engineer in Iowa since 1948 and is a member of a number of recognized societies of mechanical engineers. He has been a consultant on mechanical engineering problems to insurance companies and others as to the causes of machinery failure and accidents.

Dr. Madsen was first consulted by plaintiff about three months before trial. Because the combine involved in plaintiff's accident could no longer be located, Dr. Madsen did not examine that machine. The belt and hydraulic tubing had not been preserved for trial although several photographs of those parts were in evidence. He examined those photographs showing the exact condition of the combine including the broken belt and hydraulic line following the accident. He also examined the owner's manual and service manual for the 410 combine and examined and conducted tests on a replacement belt of the type broken in the accident.

Prior to testifying, Dr. Madsen had examined three Massey-Ferguson 410 combines with the same design as plaintiff's combine concerning the location and size of the drive belt mechanisms and nearby hydraulic tubing.

Even though Dr. Madsen's credentials were sufficient to qualify him as an expert in relation to the excluded material, that alone was not enough. The facts in the particular case upon which Dr. Madsen was to base his opinion must be sufficient to enable him to express an opinion that is more than mere speculation and conjecture. *Haumersen*, 257 N.W.2d at 11.

Plaintiff attempted to elicit Dr. Madsen's opinions by use of hypothetical questions based on the following evidence in the record, *inter alia*: plaintiff was driving down the road and felt and heard a "thumping" or beating from beneath the floorboard of the cab on the left side of the combine, the precise location of the broken main drive belt and severed hydraulic line; and that shortly thereafter he experienced a loss of steering control as the combine veered to the left.

In the offer of proof Dr. Madsen testified as to the kinetic energy involved when the drive belt was moving and that when the belt broke, it was adequate to sever, rather than bend, the nearby hydraulic line. He stated that the happening of these events caused the loss of hydraulic pressure and loss of ability of the combine operator to steer and control the machine.

Other offered testimony of Dr. Madsen concerned the likely effect of mechanical damage to the hydraulic line, circumstantially supporting his opinion that the line was severed while the combine was still up on the road.

These facts, we believe, provide a sufficient and sound factual basis for the expert opinions plaintiff attempted to elicit from Dr. Madsen, which would take such opinions out of the realm of mere speculation and conjecture.

The facts before the jury in the present case provided even a stronger basis for the expert's opinions than did those in *Haumersen*. In *Haumersen*, the trial court admitted the expert's opinion as to the cause of an accident although a lapse of time occurred between the accident and the witness's observations. Acknowledging that

the lapse of time reduced the weight of the opinion, we said:

> The evidence did provide some basis for a rational belief that the conditions Talbott related were present at the time of the accident; thus the facts on which he based his opinion were sufficient to enable him to express an opinion which was more than mere conjecture.

257 N.W.2d at 12.

Here the lapse of time problem and the fact Dr. Madsen did not examine the broken belt and line involved are not crucial because the condition of the combine after the accident was well established by both direct testimony and photographs. Also, this is an alleged defective design case, rather than a defective part case, and no dispute exists concerning the design and relative locations of the drive belt and hydraulic tubing on the combine in question.

We believe there was a factual foundation for Dr. Madsen's opinions sufficient to render them more than mere speculation or conjecture.

As we have said: "The discretion exercised by the trial court must be a legal one based on sound judicial reasons." *Dougherty*, 261 Iowa at 608, 155 N.W.2d at 491. The court abused its discretion and erred in sustaining defendant's objections to the expert opinions of Dr. Madsen.

III. *The directed verdict.* At the close of plaintiff's evidence, the court sustained defendant's motion for directed verdict as to both divisions of plaintiff's petition, which plaintiff claims was error.

"In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made." Iowa R.App.P. 14(f)(2). "Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them a jury question is engendered." Iowa R.App.P. 14(f)(17).

The circumstantial evidence rule is central to a consideration of this issue in the present case. Iowa R.App.P. 14(f)(16) provides:

> An issue may be proven by circumstantial evidence; but this evidence must be such as to make the theory reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Generally, however, it is for the jury or other trier of fact to say whether circumstantial evidence meets this test.

Essential elements to establish a cause of action under the strict liability in tort theory here are: (1) manufacture of a product by defendant; (2) the product was in a defective condition; (3) the defective condition was unreasonably dangerous to the user or consumer when used in a reasonably foreseeable use; (4) the manufacturer was engaged in the business of manufacturing such a product; (5) said product was expected to and did reach the user or consumer without substantial change in condition, *i. e.*, the defect existed at time of the sale; (6) said defect was the proximate cause of personal injuries or property damage suffered by the user or consumer; (7) damages suffered by the user or consumer. *See Hughes v. Magic Chef, Inc.*, 288 N.W.2d 542, 546 (Iowa 1980) (modifying elements stated in *Kleve v. General Motors Corporation*, 210 N.W.2d 568, 570–71 (Iowa 1973)). It is further understood the rule of strict liability in tort applies to the retailer as well as the manufacturer of a defective product. *Kleve*, 210 N.W.2d at 571.

Cases bearing on defective design of a product or project as negligence are *Schiltz v. Cullen-Schiltz & Associates, Inc.*, 228 N.W.2d 10, 16–18 (Iowa 1975), *Bengford v. Carlem Corporation*, 156 N.W.2d 855, 866 (Iowa 1968), and *Wagner v. Larson*, 257 Iowa 1202, 1216–23, 136 N.W.2d 312, 320–26 (1965).

The central factual issue was whether the hydraulic line was severed by the broken drive belt while the combine was up on the road. The evidence showed that while on the road plaintiff heard a thumping or beating sound consistent with the breaking of the drive belt, coupled with the consequent loss of steering ability. The

main drive belt was broken and the nearby hydraulic steering line was severed. This, along with Dr. Madsen's proffered testimony, was sufficient to warrant an inference that the beating broken belt severed the nearby hydraulic tubing up on the road, producing the loss of steering control experienced by plaintiff, and thereby causing the accident.

Dr. Madsen also testified before the jury or in his proffer as to what in his opinion were defects in the design of the Massey-Ferguson 410 combine. He testified the hydraulic line should have been protected "by being inside structural members" so that such line "could not be damaged by belts" or other objects. He explained the exposed location of the hydraulic line in close proximity to the main drive belt. He stated that if there is damage to the line, it may cause a loss of control of the machine. In his opinion the problem of design presented by the location of the hydraulic line was aggravated by the absence of any mechanical system as a back-up to the hydraulic steering system, because in the event of a hydraulic failure the steering could become completely inoperative.

In directing a verdict for defendant, the trial court concluded that plaintiff had failed to establish that his theory of causation was more probable than any other theory based on the evidence. More specifically, the court apparently felt that the broken right rear wheel, the broken J-bolts, or the flat front dual tire were equally probable causes of the accident. The trial court was bothered by what it felt to be an absence of any direct evidence as to the time sequence of the breaking of the belt and the hydraulic line—whether or not the hydraulic tubing broke while the combine was still up on the road. The court stated that plaintiff needed to show that something happened up on the road.

■ We believe the evidence in the record, viewed in the light most favorable to plaintiff, coupled with the proffered evidence of Dr. Madsen, was sufficient to warrant submission of the case to the jury. Under appropriate instructions, the jury should have been allowed to say whether plaintiff's circumstantial evidence met the test under Iowa R.App.P. 14(f)(16). We need only deal with the question as to "what a jury *could* find and not what a jury should find." *State Farm Mutual Automobile Insurance Company v. Anderson-Weber, Inc.*, 252 Iowa 1289, 1294, 110 N.W.2d 449, 452 (1961) (emphasis added).

It was for the jury to say whether the evidence of what happened on the road and plaintiff's theory was more probable than the other possible causes of the accident stated by defendant and the trial court. The jury must consider all of these alternatives in light of how the accident occurred and the resulting physical damage to the combine.

Defendant's motion for directed verdict and the court's ruling did not deal with specifications of negligence in the plaintiff's petition. They only dealt broadly with plaintiff's theory of the case. We believe plaintiff's theory should have been submitted to the jury. Therefore, we will not discuss whether certain alleged specifications of negligence should have been submitted and leave that for the court on retrial.

We hold the court erred in sustaining defendant's motion for directed verdict. Plaintiff presented a prima facie case in support of his petition.

We have considered the many contentions made by the parties even though not specifically discussed.

Because we find reversible error in Divisions II and III above, the case is reversed and remanded for a new trial.

REVERSED AND REMANDED.